IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

MARK W. CLUTTER,

        Plaintiff,

v.                                                          Civil Action No. 3:05-CV-62

JO ANNE B. BARNHART,
COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.

## REPORT AND RECOMMENDATION
## SOCIAL SECURITY

### I. Introduction

A.    Background

    Plaintiff, Mark W. Clutter, (Claimant), filed his Complaint on June 22, 2005, seeking Judicial review pursuant to 42 U.S.C. § 405(g) of an adverse decision by Defendant, Commissioner of Social Security, (Commissioner).[1] Commissioner filed her Answer on September 14, 2005.[2] Claimant filed his Motion for Summary Judgment and Memorandum in Support on October 12, 2005.[3] Commissioner filed her Motion for Summary Judgment and Memorandum in Support on November 29, 2005.[4]

B.    The Pleadings

        1.    Claimant's Motion for Summary Judgment and Memorandum in Support.

---

[1] Docket No. 1.

[2] Docket No. 8.

[3] Docket No. 9.

[4] Docket No. 11.

        2.        Commissioner's Motion for Summary Judgment and Brief in Support.

C.     Recommendation

I recommend that Claimant's Motion for Summary Judgment be DENIED and that the Commissioner's Motion for Summary Judgment be GRANTED because the ALJ was substantially justified in his decision. Specifically, the ALJ properly evaluated and weighed the opinion of Claimant's treating physician.

## II. Facts

A.     Procedural History

On September 29, 2003, Claimant filed for Child's Insurance Benefits (Disability) and Supplemental Security Income alleging disability since July 1, 2003. The application was denied initially and on reconsideration. A hearing was held on October 13, 2004 before an ALJ. The ALJ's decision, dated January 31, 2005, denied the claim finding Claimant not disabled within the meaning of the Act. The Appeals Council denied Claimant's request for review of the ALJ's decision on April 29, 2005. This action was filed and proceeded as set forth above.

B.     Personal History

Claimant was 20 years old on the date of the October 13, 2004 hearing before the ALJ. At the time, Claimant was in the process of finishing high school with no past relevant work experience.

C.     Medical History

The following medical history is relevant to the time period during which the ALJ concluded that Claimant was not under a disability: July 1, 2003–January 31, 2005.

**University of Health Associates, 10/10/03, Tr. 137**
Muscular dystrophy.

**University of Health Associates, 10/20/03, 6/11/03, Tr. 137-147**
Impression: Muscular dystrophy-etiology currently under work-up. Most likely limb girdle of unknown sub type at the present moment. No clinical evidence of left ventricular dysfunction, but this cannot be absolutely excluded in the absence of an echocardiogram. ECG shows subtle left ventricular changes.

**Psychiatric Review Technique Form, 12/19/03, Tr. 154-168**
No medically determinable mental impairments.

**WVU Hospitals, Inc., Department of Pathology, 8/8/03, Tr. 169-172**
Final Pathologic Diagnosis:
Muscle, right vastus lateralis, biopsy: dystrophic skeletal muscle with no histologic evidence of dystrophin deficiency; type II myofiber predominance.

**WVU Hospital Department of Pediatrics, 11/6/03, Tr. 173-176**
Impression:
1. Normal left ventricular size with mildly depressed global ventricular function.
2. Normal aortic arch.
3. Technically difficult study due to poor patient imaging.

**Dr. Kissel, 9/2/04, Tr. 177-178**
Limb girdle muscular dystrophy.

**Dr. Kissel, 3/25/04, Tr. 179-181**
Muscle weakness

**Dr. Kissel, 9/21/04, Tr. 182-184**
In an 8 hour work day: can stand, 1 hour; can walk, less than 1 hour; can sit, 8 hours; occasionally left/carry, less than 10 pounds; frequently left-carry, less than 10 pounds.

Can perform: simple grasping and handling, pushing and pulling fine manipulation and fingering.

Cannot use feet for repetitive movements as in operating foot controls.

Able to bend, kneel, squat, crawl, climb stairs, climb ladders.

D.  Testimonial Evidence

Claimant

Testimony was taken at the hearing from Claimant, who testified as follows (Tr. 196-

218):

    Q       How long - - how far can you walk at a stretch?

    A       One time, then I start - - my back starts hurting and my legs get real tight.

    Q       Okay. So - - okay. And how about just standing? Do you have any problems with standing?

    A       Yes.

    Q       Like what?

    A       I - - when I stand up, I stand on my tippy-toes. I can't stand flatfooted, so I have a balance problem. I can't really balance myself very well.

    Q       Do you also walk on your toes?

    A       Yes.

                          \*                \*                \*

    A       I have weakness in my arms.

    Q       What - - how does that affect you?

    A       Like lifting things.

                          \*                \*                \*

    Q       Okay. Now, how about when you were in school? Did you - - were you in gym class?

    A       I couldn't take gym.

    Q       Why not?

    A       Because I just - - I couldn't run. I couldn't do those sorts of things - - and that's before I even realized that I had this. Everybody always wondered why I couldn't do it.

Q       Did you ever - - were you excused from gym, like a doctor's excuse or - -

A       No. I just kind of - - I didn't - - I just didn't do it. I would just sit out. And I just like - - they'd let me do like a report or something instead of - -

*         *         *

Q       - - or that part of it? Okay. Now, you mentioned that - - you can't stand very long as a part of this disorder. And you can't walk very far. You can walk the length of the mall. And then your back hurts and your legs get tight. Is there any other part of your body that's affected?

A       My hips.

Q       What does the pain feel like in your hips?

A       It's just like a sharp pain I get once in a while.

Q       Both or just one side or the other?

A       Usually just this side. I mean both sides - -

Q       So it's the left side?

A       This side hurts worse. Yes.

*         *         *

Q       Do you have pain in any of your other joints?

A       Just my - - like my ankles like when I'm walking on maybe like gravel. They kind of give out on me and sometimes I get some pain then.

Q       Okay. What about your knees? Do you have any buckling of the knees or any problems?

A       Yeah. My knees buckle, but I really don't have much pain in them.

Q        Okay. And no pain. And when do they buckle?

A        Just when I'm walking, like - -

Q        What about stairs?

A        I have trouble walking up stairs.

Q        Do you go one at a time or - -

A        Yeah. I have to like kind of pull myself with the railing.

*        *        *

Q        Do you have any balance problems?

A        Yes.

Q        Well, what about when you're walking? You mentioned gravel. What about gravel or cobblestones or rough surfaces? Does that give you any difficulty?

A        Yeah. Because like I walk - - when I walk, I walk on my toes, so it kind of throws me off balance. I usually - - all the time I wear boots because boots kind of come up a little higher and it supports my ankles.

Q        You mean work boots or - -

A        Yes.

Q        Okay.

A        And I have to wear - - this is the first time I wore tennis shoes in a while.

Q        Okay. And the work boots, are they more comfortable than - -

A        Yeah. They're - -

Q        - - then tennis shoes?

A        - - more comfortable. And I wear like an insole inside of it to kind of - -

Q       Is that special - -

A       - - support my ankle.

Q       - - orthotics - -

A       Yeah.

Q       - - for your feet?  Is that one someone has made for you or one you - -

A       No.

Q       - - bought in the store?

A       It's - - the doctor prescribed it.

Q       Do they prescribe any kind of a walking device, any cane or anything or anything like that?

A       No.

Q       Do you ever use one?

A       Like when I was younger, I used like - - maybe if I was walking on rough terrain, I would use like - - grab like a stick or something just so I could keep up with everybody.

Q       And that was before you knew any of this?

A       Yeah.  That was before I was diagnosed with any of this.

Q       Your onset date is July of '03.  Is that when everything started getting worse or is that the first time your doctors - -

A       That's the first time I think the doctors realized - -

Q       Okay.  When you do walk and stand for any length of time, do you have any problems with tiredness?

A       Yeah. My legs get tired.  I have to sit down.

*     *     *

    Q     Okay.  Any memory problems?

    A     I got kind of a short-term memory.

E.    <u>Lifestyle Evidence</u>

The following evidence concerning Claimant's lifestyle was obtained at the hearing and through medical records.  The information is included in the report to demonstrate how Claimant's alleged impairments affect his daily life.

- Can stand, 20 minutes.  (Tr. 202).
- Can sit, 45 minutes.  (Tr. 203).
- Can lift, 10 pounds.  (Tr. 203).
- Able to drive.  (Tr. 206).
- Reads.  (Tr. 206).
- Watches television.  (Tr. 206).
- Plays computer games.  (Tr. 207).
- Sometimes goes out to the restaurant.  (Tr. 207).
- Prepares his meals.  (Tr. 208).
- Can walk, 5-10 minuets.  (Tr. 211).
- Can to pick up a case of pop.  (Tr. 203, 215).

### III.  The Motions for Summary Judgment

A.    <u>Contentions of the Parties</u>

Claimant contends that the ALJ's decision is not supported by substantial evidence. Specifically, Claimant asserts that the ALJ erred by failing to properly evaluate and weigh the

opinion of Claimant's treating physician.

Commissioner maintains that the ALJ's decision was supported by substantial evidence. Specifically, Commissioner contends that the ALJ properly evaluated and weighed the opinion of Claimant's physician.

B. The Standards.

1. Summary Judgment. Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial burden of showing the absence of any issues of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). All inferences must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). However, "a party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but...must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

2. Judicial Review. Only a final determination of the Commissioner may receive judicial review. See 42 U.S.C. §405(g), (h); Adams v. Heckler, 799 F.2d 131,133 (4th Cir. 1986).

3. Social Security - Medically Determinable Impairment - Burden. Claimant bears the burden of showing that she has a medically determinable impairment that is so severe that it prevents her from engaging in any substantial gainful activity that exists in the national economy. 42 U.S.C. § 423(d)(1), (d)(2)(A); Heckler v. Campbell, 461 U.S. 458, 460 (1983).

4. Social Security - Medically Determinable Impairment. The Social Security Act

requires that an impairment, physical or mental, be demonstrated by medically acceptable clinical or laboratory diagnostic techniques. 42 U.S.C. § 423(d)(1), (3); Throckmorton v. U.S. Dep't of Health and Human Servs., 932 F.2d 295, 297 n.1 (4th Cir. 1990); 20 C.F.R. §§ 404.1508, 416.908.

     5.    Disability Prior to Expiration of Insured Status- Burden. In order to receive disability insurance benefits, an applicant must establish that she was disabled before the expiration of her insured status. Highland v. Apfel, 149 F.3d 873, 876 (8th Cir. 1998) (citing 42 U.S.C. §§ 416(i), 423(c); Stephens v. Shalala, 46 F.3d 37, 39 (8th Cir.1995)).

     6.    Social Security - Standard of Review. It is the duty of the ALJ, not the courts, to make findings of fact and to resolve conflicts in the evidence. The scope of review is limited to determining whether the findings of the Secretary are supported by substantial evidence and whether the correct law was applied, not to substitute the court's judgment for that of the Secretary. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

     7.  Social Security - Scope of Review - Weight Given to Relevant Evidence. The Court must address whether the ALJ has analyzed all of the relevant evidence and sufficiently explained his rationale in crediting certain evidence in conducting the "substantial evidence inquiry." Milburn Colliery Co. v. Hicks, 138 F.3d 524, 528 (4th Cir. 1998). The Court cannot determine if findings are unsupported by substantial evidence unless the Secretary explicitly indicates the weight given to all of the relevant evidence. Gordon v. Schweiker, 725 F.2d 231, 235-36 (4th Cir. 1984).

     8.    Social Security - Substantial Evidence - Defined. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Substantial evidence consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (citations omitted).

9. <u>Social Security - Sequential Analysis</u>. To determine whether Claimant is disabled, the Secretary must follow the sequential analysis in 20 C.F.R. §§ 404.1520, 416.920, and determine: 1) whether claimant is currently employed, 2) whether she has a severe impairment, 3) whether her impairment meets or equals one listed by the Secretary, 4) whether the claimant can perform her past work; and 5) whether the claimant is capable of performing any work in the national economy. Once claimant satisfies Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have listed impairments but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job. <u>Rhoderick v. Heckler</u>, 737 F.2d 714-15 (7th Cir. 1984).

C. <u>Discussion</u>

FAILURE TO GIVE CONTROLLING WEIGH TO THE OPINION OF CLAIMANT'S TREATING PHYSICIAN.

Claimant alleges that the ALJ erred by failing to give controlling weigh to the opinion of Dr. Kissel, Claimant's treating physician. Commissioner counters that the ALJ properly evaluated the opinion of Claimant's treating physician.

The opinion of Claimant's treating physician is entitled to great weight and may only be disregarded if there is persuasive contradictory evidence. <u>Evans v. Heckler</u>, 734 F.2d 1012, 1015 (4th Cir. 1984). Controlling weight may be given only in appropriate circumstances to medical opinions, i.e., opinions on the issue(s) of the nature and severity of an individual's impairment(s), from treating sources, when the opinion is 1) well-supported by medically acceptable clinical and laboratory diagnostic techniques, and 2) not inconsistent with other substantial evidence in the case record. 20 C.F.R. §416.927(d)(2). <u>See</u> <u>Craig</u>, 76 F.3d at 590 (holding that a treating physician's medical opinion must be given controlling weight only when it "is well supported by

medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record). Jalous

While the credibility of the opinions of the treating physician is entitled to great weight, it will be disregarded if there is persuasive contradictory evidence. Evans v. Heckler, 734 F.2d 1012 (4th Cir. 1984). To decide whether the impairment is adequately supported by medical evidence, the Social Security Act requires that impairment, physical or mental, be demonstrated by medically acceptable clinical or laboratory diagnostic techniques. 42 U.S.C. § 423(d)(1), (3); Heckler v. Campbell, 461 U.S. 458, 461 (1983); 20 C.F.R. §§ 404.1508; Throckmorton v. U.S. Dep't of Health and Human Servs., 932 F.2d 295, 297 n.1. (4th Cir. 1990). Courts evaluate and weigh medical opinions pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant; (2) the treatment relationship between the physician and the applicant; (3) the supportability of the physician's opinion; (4) the consistency of the opinion with the record; and (5) whether the physician is a specialist. 20 C.F.R. § 404.1527 (2005). Courts often accord "greater weight to the testimony of a treating physician" because the treating physician has necessarily examined the applicant and has a treatment relationship with the applicant. Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001).

In reviewing the decision of the ALJ, the Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied, not to substitute the Court's judgment for that of the Commissioner. Id. Weighing conflicting evidence from medical experts is exactly what the ALJ is required to do. See Books v. Chater,

91 F3d 972, 979 (7th Cir. 1996)(pointing out that when assessing conflicting medical evidence from medical experts, an ALJ must decide, based on several considerations, which doctor to believe).

All medical opinions are to be considered in determining the disability status of a claimants. 20 C.F.R. §§ 404.1527(b), 416.927(b). Nonetheless, opinions on ultimate issues, such as RFC and disability status under the regulations, are reserved exclusively to the ALJ. 20 C.F.R. §§ 404.1527(e)(1)-(3), 416.927(e)(1). Statements by medical sources to the effect that a claimant is "disabled" are not dispositive, but an ALJ must consider all medical findings and evidence that support such statements. Id. "If the case record contains an opinion from a medical source on an issue reserved to the Commissioner, the adjudicator must evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record." SSR 96-5p.

In this case, the ALJ reviewed the entire medical record before him (Tr. 18). The ALJ then properly determined that the opinion of Dr. Kissel was not entitled to significant weight. (Tr. 20).

The ALJ discounted the weight given to Dr. Kissel's assessment because it was not supported by his own contemporaneous clinical findings. Specifically, the ALJ noted the following:

> The undersigned does not give any significant weight to Dr. Kissel's residual capacity evaluation. (Exhibit 9F/1-2). He indicates that the claimant cannot (sic) stand for only an hour, can walk for less than an hour and can lift less than 10 pounds. (Exhibit 9F). However, the contemporaneous report dated September 2, 2004 indicated that the claimant was doing well. (Exhibit 7F), and claimant admits to greater capabilities than Dr. Kissel finds. (Tr. 20, 21).

Additionally, the ALJ found that Dr. Kissel's assessment was inconsistent with the record as a whole. Specifically, the ALJ stated that:

13

> Claimant does not have significant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station. Dr. Kissel's opinion to the contrary (Exhibit 9F/3) is not supported by the evidence. (Tr. 20).

In this regard, the ALJ noted that Dr. Siu's physical examination of Claimant was essentially normal (Tr. 19-10). Dr. Siu found that Claimant's motor function and sensation were grossly intact; his muscle tone was normal; his gait was stable; he could tandem walk (heel to toe); he could toe walk normally and heel walk with difficulty. (Tr. 146). The ALJ also noted that Claimant was capable of living independently, preparing simple meals, driving, doing chores, attending school, using a computer, doing home exercises, and lifting ten pounds. (Tr. 21. 200-204, 206, 208). Claimant also testified that he was not undergoing any therapy or taking any medication at the time of the hearing. (Tr. 203-204).

Because it is the duty of the ALJ, not the courts, to make findings of fact and resolve conflicts in the evidence, the scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. Hays v. Sullivan, 907 F.2d at 1456. After reviewing the record, the Court finds that the ALJ properly evaluated the medical evidence of record and, therefore, his finding was supported by substantial evidence. Accordingly, the ALJ did not err when he did not give controlling weight to the opinion of Claimant's treating physician.

### IV. Recommendation

For the foregoing reasons, I recommend that Claimant's Motion for Summary Judgment be DENIED and that the Commissioner's Motion for Summary Judgment be GRANTED because the ALJ was substantially justified in his decision. Specifically, the ALJ properly evaluated and weighed the opinion of Claimant's treating physician.

14

Any party who appears *pro se* and any counsel of record, as applicable, may, within ten (10) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should be submitted to the District Court Judge of Record. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation.

The Clerk of the Court is directed to provide a copy of this Report and Recommendation to parties who appear *pro se* and all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic case Filing in the Unites States District Court for the Norther District of West Virginia.

DATED: May 24, 2006

    /s/ James E. Seibert  
JAMES E. SEIBERT  
UNITED STATES MAGISTRATE JUDGE